# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| COREY SUGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1105 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Corey Suggs, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 12; see also Docket Entry 10 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of August 14, 2013. (Tr. 173-76.) Upon denial of that application

initially (Tr. 75-82, 92-95) and on reconsideration (Tr. 83-91, 104-11), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 112). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 43-74.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 19-38.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 18, 170-72, 240-41), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2013.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of August 14, 2013 through his date last insured of September 30, 2013.
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: status post left upper extremity fracture, with left radial and ulnar nerve injuries; complex regional pain syndrome; and depression.
>
> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform less than the full range of light work . . . . He could lift and

carry 10 pounds occasionally with the left upper dominant extremity; lift and carry 20 pounds occasionally with the right upper extremity and frequently lift and carry 10 pounds frequently with the right upper extremity; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally push and pull up with the left dominant upper extremity; and never climb ladders, ropes, and scaffolds. He can occasionally handle and finger with the left dominant upper extremity and occasionally reach in all directions with the left dominant upper extremity. He should avoid concentrated exposure to extreme cold, moving machinery, hazardous machinery, and unprotected heights. He can perform simple, routine, repetitive tasks.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from August 14, 2013, the alleged onset date, through September 30, 2013, the date last insured.

(Tr. 24-37 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited."

3

Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to account for [Plaintiff's] moderate limitation in concentration, persistence, [or] pace [('CPP')] in the RFC and hypothetical question" (Docket Entry 10 at 6 (italics omitted)); and

2) "[t]he ALJ erred by failing to give the treating physician's opinion controlling weight" (id. at 7 (italics omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-12.)

### 1. CPP

In Plaintiff's first issue on review, he claims that "[t]he ALJ erred by failing to account for [Plaintiff's] moderate limitation in [CPP] in the RFC and hypothetical question." (Docket Entry 10 at 6 (italics omitted).) In particular, Plaintiff

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

contends that "[i]n *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the [United States Court of Appeals for the] Fourth Circuit held that an ALJ does not account 'for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work.'" (Docket Entry 10 at 6 (quoting Mascio, 780 F.3d at 638).) According to Plaintiff, the restriction in the RFC and dispositive hypothetical question to simple, routine, and repetitive tasks ("SRRTs") "do[es] not account for [Plaintiff's] moderate limitations in [CPP]." (Id. at 7.) Plaintiff's contentions warrant relief.

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v.

9

Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions). Here, however, the ALJ's decision provides no explanation as to why a restriction to SRRTs (see Tr. 27) sufficiently accounted for Plaintiff's moderate deficit in CPP (see Tr. 26).

As an initial matter, the ALJ's decision does not clarify whether the ALJ found that Plaintiff's depression, traumatic brain injury ("TBI"), or pain caused him to suffer moderate limitation in his ability to maintain CPP. The ALJ first found that Plaintiff's TBI constituted a non-severe impairment which caused Plaintiff to suffer only mild deficit in CPP at step two of the SEP. (See Tr. 24-25.) However, at step three, as support for the ALJ's finding that Plaintiff's depression caused moderate limitation in CPP, the ALJ relied, in part, on Plaintiff's hearing testimony that his TBI caused him to suffer limitations in "his short-term memory, long-term concentration, and focus." (Tr. 26; see also Tr. 53.) Still later, the ALJ cited a treatment note reporting that Plaintiff's "concentration was related to his pain level." (Tr. 32 (emphasis added); see also Tr. 401.) The ALJ's shifting attribution for the

10

cause of Plaintiff's concentration difficulties impedes the Court's ability to engage in meaningful judicial review.

Nor does the ALJ's assessment and weighing of the opinion evidence explain why a restriction to SRRTs in the RFC and dispositive hypothetical question adequately encompassed Plaintiff's moderate limitation in CPP. Although the ALJ accorded "significant weight" to the opinions of the state agency medical consultants (Tr. 35), those consultants did not find that Plaintiff suffered from any mental impairments (see Tr. 77, 86) and, therefore, neither assessed Plaintiff's ability to maintain CPP, nor determined a mental RFC (see Tr. 77-79, 86-88). Furthermore, although the ALJ afforded "partial weight" to the opinion of Plaintiff's treating neurosurgeon, Dr. Fraser J. Leversedge (Tr. 35), the ALJ specifically discredited only Dr. Leversedge's opinion that Plaintiff could "never use the left hand to handle and finger and could only lift five pounds," implying that the ALJ credited Dr. Leversedge's opinion that Plaintiff "*often* had pain severe enough to interfere with attention and concentration" (id.; see also Tr. 331).

The ALJ's discussion of Plaintiff's daily activities also did not provide the needed explanation under Mascio. Although the ALJ noted that Plaintiff could "drive[] 100 miles per week" and "pay[] bills on the computer," activities that arguably require a degree of CPP to complete, the ALJ did not link Plaintiff's engagement in

11

such activities to an ability to perform SRRTs. (See Tr. 34.) Indeed, after including SRRTs in the RFC (see Tr. 27), the ALJ's decision does not mention SRRTs again (see Tr. 27-38).

As a result, without further explanation, the ALJ's decision does not provide "an accurate and logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), between the ALJ's conclusion that Plaintiff suffered moderate CPP and the ALJ's decision that Plaintiff could perform SRRTs. Under these circumstances, the Court should remand for further administrative proceedings consistent with Mascio.

### 2. Treating Physician's Opinion

In Plaintiff's second and final assignment of error, he alleges that "[t]he ALJ erred by failing to give the treating physician's opinion controlling weight." (Docket Entry 10 at 7 (italics omitted).) More specifically, Plaintiff contends that "the ALJ did not provide 'persuasive contradictory evidence' to overcome" the opinion of Dr. Fraser J. Leversedge, Plaintiff's treating neurosurgeon (id. at 11 (quoting Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)), who limited Plaintiff to less than sedentary work (id. at 7 (citing Tr. 329-35)). Moreover, according to Plaintiff, "the evidence provided by the [s]tate agency non-examin[ing consultants] cannot serve as substantial evidence supporting denial of benefits because the medical testimony of

12

examining and treating physicians *does not go both ways*." (Id. at 11-12 (citing Long v. United States Dep't of Health & Human Servs., 1990 WL 64793, at *3 (4th Cir. 1990) (emphasis in original)).)

As an initial matter, Plaintiff misrelies on the "persuasive contradictory evidence" standard. That phrasing of the "treating physician rule" no longer represents the governing standard. See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling." (internal citation omitted)); accord Brown v. Astrue, Civil Action No. CBD-10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished); Benton v. Astrue, Civil Action No. 0:09-892-HFF-PJG, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished); Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001); Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996).

Under the proper standard, the treating source rule does generally require an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a

13

claimant's impairment. See 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

On September 7, 2016, Dr. Leversedge completed a "Medical Source Statement About What the Claimant Can Still Do Despite Impairment(s)" ("MSS") (Tr. 329-35), diagnosing Plaintiff with status post left humerus fracture, left radial and ulnar nerve injuries, and complex regional pain syndrome ("CRPS"), which caused

14

Plaintiff to suffer pain, reduced range of motion, reduced grip strength, and sensory changes in the left hand, as well as muscle weakness and atrophy in the left upper extremity (see Tr. 329). As a result of those impairments, Dr. Leversedge concluded that, although Plaintiff had no restrictions in lifting and carrying with his right, non-dominant upper extremity, he could lift and carry only one to five pounds occasionally with the left upper extremity. (See Tr. 332.) Dr. Leversedge further opined that Plaintiff could never reach in any direction, handle, or finger with his left upper extremity (see Tr. 332, 334), and that his impairment would cause his absence from work more than three times per month (see Tr. 335).

The ALJ discussed Dr. Leversedge's opinion, and then weighed it as follows:

> The [ALJ] gives partial weight to this opinion. That [Plaintiff] can never use the left hand to handle and finger and could only lift five pounds is not fully supported by the medical evidence of record, in light of [Plaintiff's] activities of daily living and earlier clinical and electromyography findings [(Tr. 347, 426, 431, 463)], which show he is clearly doing better. He was occasionally helping a friend at a customer service desk [(Tr. 337)], was running the household with the children [(Tr. 541)], and running up to two miles per day [(Tr. 456)]. He said his pain was reasonably well controlled [(Tr. 350-51)].

(Tr. 35.) The ALJ's finding that Dr. Leversedge's opinion did not harmonize with Plaintiff's daily activities and "the medical

15

evidence of record" (id.) lacks the support of substantial evidence.

The ALJ improperly relied on Plaintiff's daily activities to discount Dr. Leversedge's significant restrictions on Plaintiff's use of his left arm, because none of the activities cited by the ALJ demonstrated that Plaintiff enjoyed more functional use of his left arm than prescribed by Dr. Leversedge. Although the ALJ relied on Plaintiff's statement to a treatment provider on November 20, 2015, that "[h]e was occasionally helping a friend at a customer service desk" (id.; see also Tr. 337), the statement occurred over two years after Plaintiff's date last insured, and neither indicated how often Plaintiff assisted his friend nor elaborated any further regarding what types of activities Plaintiff's assistance to his friend entailed, let alone whether (and to what extent) such activities involved the use of his left arm (see Tr. 337). Similarly, the ALJ's reliance on Plaintiff's ability to "run[] the household" and take care of his children (see Tr. 35) misses the mark, because Plaintiff consistently stated that he wore a brace on his left arm all the time, and did not use his left arm to pick up or handle objects or to perform household chores (see Tr. 51, 57-58, 63). In the same vein, the ALJ fails to explain how Plaintiff's ability to run one to two miles per day, which Plaintiff testified he does while wearing a brace on his left

arm (see Tr. 65), demonstrated that Plaintiff could use his left arm to a greater degree than that opined by Dr. Leversedge.

The ALJ's reliance on the "medical evidence of record" and/or "earlier clinical and electromyography findings" to discount Dr. Leversedge's opinion fares no better. (Tr. 35 (citing Tr. 347, 426, 431, 463).) The four pages of the administrative transcript cited by the ALJ do not reflect "earlier clinical and electromyography findings" that contradict Dr. Leversedge's opinion regarding Plaintiff's left arm functionality. (See Tr. 347, 426, 431, 463.) Those pages contain the following findings:

- A cover page for an office visit to Dr. Leversedge on October 27, 2015, which does not contain any medical findings at all (see Tr. 347);

- A September 25, 2014, treatment note from Dr. Leversedge reflecting decreased strength in Plaintiff's left triceps, biceps, flexor carpi radialis, flexor digitorum profundus, and lumbricals, no firing of the intrinsic muscles in Plaintiff's left hand, no sensation in the superficial branch of the radial nerve distribution, dysesthesias in the ulnar nerve distribution, and significantly decreased range of motion in Plaintiff's left wrist (see Tr. 426);

- A Duke pain clinic visit on September 24, 2014, which records visible atrophic skin changes and diminished hair growth on Plaintiff's posterior left hand, absent extension of the wrist and digits and decreased grip strength of Plaintiff's left hand, and severely diminished sensation to light touch and pin prick in Plaintiff's left forearm, hand, and fingers, as well as abnormal electromyography results showing evidence of left ulnar, radial, musculocutaneous, and anterior interosseous nerve axonal loss (see Tr. 431); and

17

- A treatment note dated July 28, 2016, from the Duke pain clinic indicating a normal <u>mental status evaluation</u>, Plaintiff's assessment of his arm pain as a six on a scale of one to ten, and the clinician's notation that Plaintiff's left upper extremity remained in a splint and displayed "reduced strength grossly" (Tr. 463).

The above-described findings do not undermine (and in fact appear to support) Dr. Leversedge's opinion regarding Plaintiff's limited ability to use his left arm.

In sum, as substantial evidence does not support the ALJ's decision to discount Dr. Leversedge's opinion as it related to Plaintiff's left arm functionality, Plaintiff has demonstrated an entitlement to remand on this issue as well.

## **CONCLUSION**

Plaintiff has established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings 1) as to why, for purposes of establishing an RFC, restricting Plaintiff to SRRTs adequately accounts for his moderate limitation in CPP (or, alternatively, whether additional restrictions should apply and/or whether jobs that can accommodate any such additional restrictions exist in substantial numbers); and 2) reevaluation of the opinion of Dr. Leversedge in accordance with 20 C.F.R. § 404.1527. As a result,

Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied.

                                                  /s/ L. Patrick Auld
                                                      **L. Patrick Auld**
                                   **United States Magistrate Judge**

November 2, 2018